ROBERT C. BAKER, ESQ.
MELISSA S. FINK, ESQ.
**BAKER, KEENER & NAHRA**
633 W. 5th Street, Suite 5400
Los Angeles, CA 90071
(213) 241-0900; Fax: (213) 241-0990
rbaker@bknlawyers.com
mfink@bknlawyers.com

Attorneys for Responding Party
Walter J. Lack

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Disciplinary Matter of<br>WALTER J. LACK<br><br>California State Bar No.:<br><br>57550 | CASE NO. MC-10-303 ABC<br><br>**RESPONSE TO ORDER TO SHOW CAUSE (ATTORNEY DISCIPLINE)**<br><br>**LOCAL RULE 83-3.2**<br><br>**[PREVIOUSLY FILED UNDER SEAL ON SEPTEMBER 8, 2010]**<br><br>**[REDACTED]** |

339286

1

**RESPONSE TO ORDER TO SHOW CAUSE (ATTORNEY DISCIPLINE)**

WALTER J. LACK submits this response to the Court's Order to Show Cause, and contests the imposition of discipline contemplated in that Order, as follows:

1. Mr. Lack has reported to this Court that on July 13, 2010, the United States Court of Appeals for the Ninth Circuit filed an Order of Discipline, captioned *In re: Girardi*, Ninth Circuit Nos. 08-80090, 03-57038.

2. Mr. Lack respectfully requests that this Court impose no further sanctions, as the discipline and monetary sanctions already imposed upon him have more than served the purpose and objectives of attorney disciplinary rules.

3. Substantial reasons exist to justify a departure from the discipline imposed by the Ninth Circuit, within the meaning of *Local Rule* 83-3.2.3. The record in the Ninth Circuit proceedings demonstrates the complexity of the issues, with real differences in opinion between the Ninth Circuit panel and Special Master (who heard several days of evidence and did not impose so harsh a penalty), and the Independent Prosecutor (who examined the entire record and gathered additional information, and also urged a lesser penalty.) Imposition of additional discipline would result in a grave injustice.

4. Because the proceedings at the Ninth Circuit involved attorney discipline, many of the filings were made under seal, as is this response, pursuant to Local Rule 8-3.1.6. For that reason, a certified copy of the entire record cannot be prepared within the time allowed for response to the Order to Show Cause. The record below is voluminous and mostly sealed. Mr. Lack contests not the record, but the mechanical imposition of parallel discipline, as explained below. Mr. Lack supplies herewith documents that were part of that record that should fairly and objectively describe the conduct for which discipline was imposed and the views of the Special Master and Independent Prosecutor who examined the evidence.

5. Attached to this Response as Exhibit "1" is a copy of the general docket in Case No. 03-57038. On June 9, 2008, the Panel issued an Order that the Clerk open a new disciplinary docket, No. 08-80090, a copy of which is attached to this Response as

Exhibit "2". Should this Court wish to examine additional materials identified on either docket, Mr. Lack will use best efforts to secure those records.

6. The Ninth Circuit Order follows a series of exhaustive proceedings and investigations that have spanned more than five years. The facts leading to the Ninth Circuit appeal were recited in the Order, which was previously supplied to this Court. That Order explains that the disciplinary proceedings followed the filing of an appeal in the Ninth Circuit, appealing from the dismissal of an action, originally filed in the state Superior Court, to enforce a Nicaraguan judgment.

7. It is undisputed that a judgment was entered in Nicaragua. The dispute below concerned the identity of the defendants on the judgment and the effect and meaning of proceedings in the Nicaraguan courts. Those proceedings were conducted in the Spanish language by Nicaraguan lawyers who are not before this Court, nor members of this Court's Bar.

    a. On May 14, 2003, an underlying civil Complaint under California's Recognition Act (Cal. *Code of Civil Procedure* §§ 1713 - 1713.8, repealed 2007) was filed in the Los Angeles Superior Court by Engstrom, Lipscomb & Lack and another law firm, to enforce a judgment that had been secured in Nicaragua under its Special Law 364. The judgment had been rendered on behalf of Nicaraguan banana plantation workers who had been exposed to the pesticide 1,2-dibromo-3-chloropropane ("DBCP").[1] A portion of a document, the "Notary Affidavit," was attached to the

---

[1] DBCP was described by the Ninth Circuit as "a powerful pesticide. Tough on pests, it's no friend to humans either. Absorbed by the skin or inhaled, it's alleged to cause sterility, testicular atrophy, miscarriages, liver damage, cancer and other ailments that you wouldn't wish on anyone. Originally manufactured by Dow Chemical and Shell Oil, the pesticide was banned from general use in the United States by the Environmental Protection Agency in 1979. But the chemical companies continued to distribute it to fruit companies in developing nations." *Patrickson v. Dole Food Co.*, 251 F.3d 795, 807 (9th Cir. 2001), *aff'd on other grounds Dole Food Co. v. Patrickson*, 538 U.S. 468, 155 L. Ed. 2d 643, 123 S. Ct. 1655 (2003).

Complaint, and identified as the "Writ of Execution" upon which enforcement of the Nicaragua judgment was based. This document had been supplied by the Nicaraguan law firm that had secured the judgment, Ojeda, Gutierrez & Espinoza.

      b.    Although the Notary Affidavit had the trappings and appearance of an official document of the Nicaraguan Court, including tax stamps, seals and the certifications of the Supreme Court of the Republic of Nicaragua and the General Consulate of Nicaragua, it was not itself the Writ of Execution, contrary to the belief of Mr. Lack. Rather, the Notary Affidavit purported to translate and transcribe the proceedings that culminated in the Writ of Execution. A copy of the Notary Affidavit is attached to this Response as Exhibit "3." That translation differed from the original Writ of Execution in two key respects: Dole Food Corporation, the name used to connote the banana grower in Nicaraguan proceedings, appeared as Dole Food Company in the Notary Affidavit, and Shell Oil Company was converted to Shell Chemical Company in the Notary Affidavit.

      c.    The Notary Affidavit was prepared by a Spanish-English translator appointed by the trial judge in the Nicaragua proceedings. He possessed a degree in Comparative languages and testified that the term "company" and "corporation" are used interchangeably in Central American countries.

      d.    Mr. Lack testified that he did not then know or appreciate that the Notary Affidavit was not itself a Writ of Execution and so he was unaware that it differed from the Writ of Execution. He accepted the representations of Ojeda, Gutierrez & Espinoza representative Walter Gutierrez that the Notary Affidavit could be used to enforce the judgment.

      e.    On July 17, 2003, two of the defendants named in the Superior Court action removed it to this Court, and moved to dismiss the Complaint. Plaintiffs moved to remand the action to state court, and opposed the Motion to Dismiss, attaching declarations from Nicaraguan counsel and two experts.

      f.    On October 16, 2003, the District Court denied the Motion to Remand and granted the Motion to Dismiss.

      g.    On November 20, 2003, a Notice of Appeal to the Ninth Circuit was filed. Briefing by both sides followed.

      h.    While the appeal was pending, discovery conducted in a different but related case resulted in production in April, 2005, by Engstrom, Lipscomb & Lack of the actual Nicaraguan Writ of Execution. Attached to this Response as Exhibit "4" is a copy of the Writ of Execution. Mr. Lack did not possess this Writ of Execution prior to April, 2005; that document had been in the possession of Nicaraguan counsel since it was issued in 2003 until it was delivered to Engstrom, Lipscomb & Lack for production in the related case.

      i.    Defendants moved to supplement the record on appeal with that document and plaintiffs unsuccessfully opposed that motion.

      j.    On July 11, 2005, plaintiffs/appellants dismissed the appeal prior to oral argument.

8.    In August, 2005, the United States Court of Appeals for the Ninth Circuit began the disciplinary process with the issuance of an Order to Show Cause directed to Mr. Lack, Mr. Traina, a junior associate at Engstrom, Lipscomb & Lack who had worked on the briefs and the firm itself. Attached to this Response as Exhibit "5" is a copy of the Order to Show Cause. Mr. Lack responded to the Order to Show Cause.

9.    On March 28, 2006, the Panel appointed Judge Wallace A. Tashima as Special Master to oversee further proceedings.

10.    Because the proceedings involved attorney discipline, many of the filings were made under seal, as is this Response. One of the attorneys subject to the Order to Show Cause in the United States Court of Appeals for the Ninth Circuit (the "junior associate") was *privately* reprimanded and in order to preserve that privacy those filings should remain under seal.

11. After extensive discovery and briefing, Judge Tashima presided over a four-day trial of the issues relevant to sanctions, from October 22, 2007 to October 25, 2007. Judge Tashima bifurcated the issues of sanctions and discipline, and heard and received extensive evidence, including deposition and live testimony of Mr. Lack, Mr. Traina, witnesses in Nicaragua and others with information about the events leading to the Nicaraguan judgment and its aftermath. The dockets attached to this Response as Exhibits "1" & "2" demonstrate how complex the issue was, how extensively it was investigated and how thorough was the examination of events by Judge Tashima.

12. On March 21, 2008, Judge Tashima submitted his detailed report addressing sanctions and the nature of the conduct leading to the sanctions that he recommended. Attached to this Response as Exhibit "6" is that Report. That Report was thereafter corrected and was filed October 7, 2009 as an Appendix to the Order of Discipline.

13. The sanctions recommended by Judge Tashima have been paid.

14. On March 21, 2008, Judge Tashima filed under seal a Supplemental Report

15. Mr. Lack

16. The Ninth Circuit Panel appointed Professor Rory K. Little as Independent Prosecutor on July 10, 2008. He spent ten months further investigating the matter. He interviewed Respondents, reviewed the entire record, conducted independent legal research and supplemental fact investigation and contacted Defendants in the underlying appeal in order to determine their views on the matter, before producing "The Independent Prosecutor's Report, Recommendation, and Agreement with Respondents

339286
6
**RESPONSE TO ORDER TO SHOW CAUSE (ATTORNEY DISCIPLINE)**

Regarding Discipline" (the "Independent Prosecutor's Report"). Attached to this Response as Exhibit "8" is a copy of the Independent Prosecutor's Report.

17. Professor Little

18. Meanwhile, Engstrom, Lipscomb & Lack

19. Professor Little

20. Mr. Lack

21. Professor Little

339286

RESPONSE TO ORDER TO SHOW CAUSE (ATTORNEY DISCIPLINE)

22. Professor Little

23. Professor Little's

24. On July 13, 2010, the Ninth Circuit issued its Order, which called for a six month suspension in that Court for Mr. Lack,

25. The conduct that led to the discipline will never be repeated; it was all within the context of a single proceeding in the prosecution of an appeal involving a foreign judgment in a foreign language. The matter was unique, very complex and the conduct giving rise to the disciplinary Order was not part of any pattern of misconduct.

26. Neither Mr. Lack nor Mr. Traina speak nor read Spanish. Neither practice law in Nicaragua. They relied on others to explain the content and import of documents from other courts in other languages.

27. *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220 (11th Cir. 2003) is strikingly similar. There, U.S. attorneys were hired to prosecute claims for individuals injured in an Ecuadorean airplane crash. The attorneys were not fluent in Spanish, and relied on documents and representations of the referring Ecuadorean lawyer. When it was discovered that medical records had been altered, defendants sought and won sanctions under 28 U.S.C. § 1927. In reversing, the Eleventh Circuit Court of Appeals noted the difficulties inherent in international disputes involving foreign language, foreign culture

and foreign attorneys. There was no reason that the attorneys should have disbelieved the duly licensed referring attorney. The Court specifically avoided creating a rule of law imposing such a duty on attorneys representing foreign nationals. Indeed, "just being duped is not sanctionable." *Id.* at 1226. The Court also reversed the District Court's award of sanctions under Florida's disciplinary statutes because it was not unreasonable for the attorneys to have relied on the referring attorney.

28. Courts, attorneys and the parties frequently struggle with translation and cultural problems, *see e.g. United States v. Zambrana*, 841 F.2d 1320, 1337 (7th Cir. 1988):

> "It is axiomatic that a translation of most foreign languages to English (and vice versa) can never convey precisely and exactly the same idea and intent comprised in the original text, and it is unrealistic to impose an impossible requirement of exactness before allowing a translation to be considered by a jury . . .
>
> . . . it is more properly the function of the finder-of-fact to weigh the evidence presented by the parties as to the accuracy of the proffered translation and to determine the reliability of the translation on the basis of that evidence. *Cf. United States v. Torrez-Flores*, 624 F.2d 776, 781 (7th Cir. 1980) (reliability of a translator is an issue of credibility for the trier of fact to resolve); *United States v. Cruz*, 765 F.2d 1020, 1023 n.4 (11th Cir. 1985) (interpretation of a foreign language translation presents a jury question)."

29. Nicaraguan Courts do things according to Nicaraguan procedure, and relate what they have done in their own language. Mr. Lack now recognizes that he did not appreciate the differences in documents, policies and procedures and did not take adequate steps to ensure the reliability of documents he had submitted on an ongoing basis. The internal procedures adopted at Engstrom, Lipscomb & Lack address those problems.

30. As the Independent Prosecutor

31. The monetary sanctions and suspension already in effect and the extensive mitigation efforts by Mr. Lack amply ensure the integrity of the system. The purpose of attorney discipline is not to punish the errant attorney, but rather, to protect the public, courts and the legal system. *Bach v. State Bar*, 43 Cal.3d 848, 856, 239 Cal.Rptr. 302, (1987). That purpose has been well and fully served. Mr. Lack's work and mitigation demonstrates his genuine remorse and his commitment to his responsibilities as a member of the Bar of this Court.

32. The Ninth Circuit Order on Discipline was, of course, published, and the order on the discipline imposed was followed by considerable press coverage. Attached as Exhibit "10" is a sampling of articles showing coverage on both coasts, and including the Los Angeles Daily Journal. As a result, the public and private humiliation has been far beyond that which might be expected for a less prominent attorney. Self-reflection and remorse have been a constant in the life of Mr. Lack for over five years. The punishment already handed out has served its purpose and has and will have a lasting effect on his professional career for the rest of his life.

33.               . Mr. Lack has dedicated his entire professional career to the effective, zealous and ethical representation of plaintiffs, who may have little other recourse in the law. To ensure that no clients would be adversely affected by these proceedings, other partners at Engstrom, Lipscomb & Lack have appeared in proceedings in this Court alongside Mr. Lack.

34. For all of these reasons, Mr. Lack submits that the discipline already imposed has more than adequately redressed the offense.

35. Mr. Lack stands ready and willing to make any further submissions as the Court may request, and requests an opportunity to orally address the Court before it reaches any decision on discipline.

DATED: January 18, 2011

Respectfully submitted,

By: /s/ Robert C. Baker
ROBERT C. BAKER, ESQ.
MELISSA S. FINK, ESQ.
**BAKER, KEENER & NAHRA**
633 W. 5th Street, Suite 5400
Los Angeles, CA 90071
(213) 241-0900; Fax: (213) 241-0990
rbaker@bknlawyers.com
mfink@bknlawyers.com

339286

11

**RESPONSE TO ORDER TO SHOW CAUSE (ATTORNEY DISCIPLINE)**